## Thomas v. Commonwealth.

(Decided April 23, 1918.)

### Appeal from Laurel Circuit Court.

1. **Criminal Law—Evidence—Opinion.**—An undertaker, who pre-
pared for burial the body of the victim of a homicide, having
testified that he had been an undertaker for nearly twenty years
and had quite a bit of experience in examining gun shot wounds
upon the bodies of human beings, was qualified, after describing
the appearance of the several wounds in the body of the de-
ceased, to state his opinion from such appearances as to which
of the wounds resulted from the entrance or exit of a bullet.

2. **Jury—Separation.**—Where one of a jury, accepted to try a homi-
cide case, in the presence of the jury, court, accused, and coun-
sel, approached a spectator in the court room to ask him to look
after his horse, and was, at the beginning of his conversation,
intercepted by the sheriff and returned to his seat, there was not
a separation of the jury.

H. J. JOHNSON and HAZELWOOD & JOHNSON for appellant.

CHARLES H. MORRIS, Attorney General, OVERTON S. HOGAN,
Assistant Attorney General, G. I. RADER, GEORGE G. BROCK and
C. I. DAWSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellant was convicted and sentenced to life im-
prisonment in the penitentiary for the murder of Thomas
Johnson. He assigns two reasons for a reversal of the
judgment: First, the admission of incompetent evi-
dence; and second, a separation of the jury.

1. J. B. Eberlein, the undertaker who prepared the
body of Johnson for burial, testified that he found four
pistol shot wounds in the body, one of which entered the
right breast, one the left side of the abdomen, and the
other the back near the spine; that the one in the back
caused death. It is insisted that this is expert evidence
and that the witness did not qualify to give such evi-
dence, which was therefore incompetent, and very preju-
dicial since it sustained the evidence of the two witnesses
for the Commonwealth, who saw the shooting, and de-
stroyed the evidence of defendant and his son. The
witnesses for the Commonwealth testified that, follow-
ing a discussion of a previous business transaction, the
defendant without apparent reason shot and killed de-

cedent, who was unarmed and had both hands up when the second and third shots were fired and had turned from a position facing defendant as the shots were fired until, when the last shot was fired, he had his side or back to the defendant; while defendant and his son stated deceased did not at any time hold up his hands or turn from a position facing defendant; and that, after an insulting remark, he put his right hand to his breast in an apparent effort to draw a pistol from a holster, before defendant began shooting. All the witnesses agree deceased did not produce any weapon, that he was in his shirt sleeves, and, in fact, had no weapon.

Eberlein stated that he had been an undertaker since 1898 and had quite a bit of experience in examining gun shot wounds in the bodies of human beings, that a bullet made a small round hole entering a human body and a larger and less even hole at the place of exit. Except as to his statement that the shot in the back caused the death we do not entertain any doubt of the competency of this evidence based upon a knowledge acquired in nearly twenty years' experience in the undertaking business in a locality where, as he expressed it, he had "quite a little bit" of experience in examining gun shot wounds in the bodies of human beings. Moreover, he explained the difference, in his experience, in the kind of wounds made at the places of entrance and exit, upon which he based his opinion, and if his reasons were unsound, witnesses could, no doubt, have been easily found to have exposed their fallacy, which was not attempted, as we apprehend, because what he said about the appearance of such wounds is a matter of common knowledge in that community. His statement that the wound in the back caused the death, if erroneous and incompetent, was not prejudicial, because it is immaterial which shot produced death, as appellant fired all of them and it is not contended that death did not result from some one or all of the shots fired by defendant.

2. The affidavits with reference to the alleged separation of the jury show that, during a temporary lull in the court proceedings, in the court room and in the presence of the court, jury, counsel, and the defendant, one of the jurors got up from his seat in the jury box and approached an unidentified person, who had possibly testified for the Commonwealth, for the purpose of asking him to look after the juror's horse; and that,

just as he began a conversation with this person, the sheriff put his hand on the juror's shoulder and told him he must not do that, when the juror returned to his seat, only about eight feet distant. This was in no sense a separation of the jury, and, as a ground for reversal, is so obviously void of merit as not to require discussion.

Upon the evidence of the Commonwealth, defendant murdered deceased in cold blood, and was without justification even upon his own testimony.

Wherefore, the judgment is affirmed.